**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **DON STRANGE OF TEXAS, INC.,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CASE NO. 5:20-CV-898** |
| | § | |
| **THE CINCINNATI INSURANCE** | § | |
| **COMPANY, AND JOHNATHAN** | § | |
| **ANDREW MALISH,** | § | |
| *Defendants*. | § | |

## NOTICE OF REMOVAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes Defendant, The Cincinnati Insurance Company ("Defendant"), and files this Notice of Removal under 28 U.S.C. § 1332. In support of this Notice of Removal ("Removal"), Defendant respectfully shows the Court as follows:

### I.
### STATEMENT OF GROUNDS FOR REMOVAL

1.     This suit is an action in which this Court has original jurisdiction under 28 U.S.C. §1332, as it is an action between citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. Thus, this action may be removed to this Court pursuant to the provisions of 28 U.S.C. §1441[1] and 28 U.S.C. §1446.

2.     Plaintiff, Don Strange of Texas, Inc., filed its Original Petition on or about June 24, 2020, in the 224th Judicial District Court, Bexar County, Texas, in Cause No. 2020C11482 styled "*Don Strange of Texas, Inc. v. The Cincinnati Insurance Company, and Jonathan Andrew Malish.*"[2]

---

[1] 28 U.S.C. §1441(b) provides that suits that do not arise under federal law are removable if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such actions is brought.
[2] *See* Exhibit "1" Plaintiff's Original Petition.

3.      Plaintiff sued Defendants requesting declaratory judgment, and alleging claims for breach of contract, breach of common law duty of bad faith, and violations of the Texas Insurance Code chapters 541 and 542.

4.      Defendant The Cincinnati Insurance Company was served on July 8, 2020. Defendant files this Removal within 30 days after the receipt of the Original Petition, as required by 28 U.S.C. § 1446(b)(1).

## II.
## DIVERSITY OF CITIZENSHIP

5.      For the purpose of determining diversity, a corporation is deemed to be a citizen of both the state of its incorporation and the place where it maintains its principal place of business.[3]

6.      The forum state is Texas. At the time of the filing of Plaintiff's Original Petition, Plaintiff, Don Strange of Texas, Inc., was formed and incorporated under the laws of the State of Texas, and was authorized to transact business in Texas with its principal place of business in Bexar County, Texas.

7.      After conducting a diligent search of publicly available information, and upon information and belief of the Defendant, Plaintiff, Don Strange of Texas, Inc. is incorporated in and existing under the laws of the State of Texas, and is a citizen of the state with its principal place of business located in Bexar County, Texas.[4] Because Plaintiff, Don Strange of Texas, Inc. was a citizen of the State of Texas on the date this case was filed, maintains its principal place of business, and remains a citizen of the State of Texas, Plaintiff is a citizen of Texas for purposes of determining diversity.

8.      Defendant, The Cincinnati Insurance Company ("CIC"), is and was at the time that

---

[3] *See* 28 U.S.C. §1332(c)(1).
[4] See Exhibit "2" Articles of Incorporation Amended and Restated Don Strange of Texas, Inc. filed with the Texas Secretary of State October 15, 1986.

this action was instituted against it, incorporated and existing under the laws of the State of Ohio with its principal place of business in Fairfield, Ohio. Defendant, The Cincinnati Insurance Company, was not at the time when this action was instituted against it, and still is not, a citizen of the State of Texas.

9.      Defendant, Jonathan Andrew Malish ("Malish") is an employee of CIC. The allegations against him involve his actions as a CIC employee, acting in the scope of that employment. At the time of the filing of Plaintiff's Original Petition Malish was a citizen of the State of Texas and is domiciled in Bexar County, Texas. With respect to the claims against Defendant Malish, CIC asserts that Malish has been improperly and/or fraudulently joined in this action for the sole purpose of defeating diversity jurisdiction. There are insufficient facts to determine a reasonable basis of recovery against the adjuster. When fraudulent joinder is asserted, the Court must "pierce the pleadings" to determine whether a cause of action grounded in fact exists.[5]

10.      The removing party bears the burden of proving that non-diverse defendants have been fraudulently joined to defeat diversity, either by showing that (1) there has been outright fraud in the plaintiff's recitation of jurisdictional facts, or (2) there is no reasonable basis, for predicting that the plaintiff might establish liability against a named in-state defendant in state court.

11.      Based on Plaintiffs pleading, there is no reasonable basis to predict that Plaintiff might be able to establish liability against Malish. As the Court noted in *Struder v. State Farm Lloyds*, "whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiff's allegations and the pleaded theory of recovery." [6] A "factual fit" means "that the state-court petition must allege facts sufficient to establish the essential

---

[5] *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir. 1990), cert. denied, 498 U.S. 817 (1990).
[6] *Struder v. State Farm Lloyds*, No. 13-CV-413, 2014 WL 234352, at 3 (E.D. Tex. Jan. 21, 2014).

elements of each asserted cause of action."[7] The Court further elaborated that merely "asserting a laundry list of statutory violations without factual support as to how a non-diverse defendant violated the statute will not suffice" to establish a valid joinder. [8]

12.     Similar to *Struder*, Plaintiff has not set forth any specific facts that would indicate Malish improperly handled, undercut, or compromised the investigation leading up to CIC's denial of the property damage claim. Absent any specific factual allegations that Malish violated  one of the statutory provisions of the Texas Insurance Code in his handling of the claim, liability cannot be imputed to the adjuster for merely showing up to work and doing his job. Plaintiff erroneously asserts that because Malish issued a denial letter soon after receiving photos and documents furnished by Plaintiff, and that this somehow establishes prima facie evidence of mishandling of the investigation is conclusory.

13.      Further, Plaintiff merely asserts a laundry list of statutory violations and draws several conclusions without stating sufficient facts to support how Malish improperly handled the investigation of this claim.  Moreover, even if Malish wanted to further investigate the claim by conducting a site inspection visit, or take additional time to review the photos and documents furnished to him by Plaintiff, as Plaintiff is suggesting, there is no plausible way Malish could have detected any "direct physical loss" to the commercial property because the presence of COVID-19 is not known to be perceived by any human senses, and its presence on a tangible area would not be readily detected.

14.     Additionally, a relevant persuasive opinion in a similar situation as this matter was rendered by the United States District Court for the Central District of California in *Mark's Engine Co. No. 28 Rest., LLC v. Traveler's Indem. Co. of Conn., et al.* In *Marks Engine*, the Court issued

---

[7] *Id.*
[8] *Id.*

an opinion denying the plaintiff policyholder's motion for remand.[9] The Court rejected the plaintiff's argument and found that the declaratory judgment claim against Mayor Garcetti was a sham, since a party is fraudulently joined where a "plaintiff's claims against [the] alleged sham defendant [are] all predicated on a contract to which the defendant [is] not a party." [10] Similarly in this matter, Plaintiff has attempted to argue that Malish, a CIC employee, is a proper party to this action construing Plaintiff's insurance policy with Cincinnati—despite the fact that Malish is not a party to the contract/policy.  Accordingly, Defendants request that this Court take judicial notice of the *Mark's Engine* opinion and, as the Court did there, dismiss Malish on the basis of fraudulent joinder.

15.     Moreover, Plaintiff's use of speculative and conclusory allegations against Defendant Malish is a common tactic that is disfavored by courts in this Circuit, and cannot in and of itself be grounds to substantiate any claims or violations of the Texas Insurance Code.[11] Moreover, Plaintiff's allegations fail to state any specific time, place, or content of any alleged impropriety in the investigation that was conducted by Malish other than Plaintiff's disagreement with the denial of the claim.

16.     Based on the factual allegations made, it is evident that Plaintiff has no intention of pursuing an action against Defendant Malish, and there is no plausible basis for joining Malish in this lawsuit other than to defeat diversity. Another case analogous to the type of situation found here is *Plascencia v. State Farm,* where the court found that a "standard form petition developed for use in similar cases" which appears "purposefully designed to defeat federal court jurisdiction"

---

[9] See Exhibit "3" Opinion issued by the United States District Court for the Central District of California; Case No. 2:20-cv-04423-AB-SK, *Mark's Engine Co. No. 28 Rest., LLC v. Traveler's Indem. Co. of Conn., et al.*
[10] *See Id.*, at page 7.
[11] *See Waters v. State Farm Mut. Auto. Ins. Co.,* 158 F.R.D. 107, 109 (S.D. Tex. 1994) (finding fraudulent joinder).

is a badge of improper joinder sufficient to defeat remand. [12] In *Plascencia*, the court reasoned that plaintiff's use of boilerplate language to establish liability against the adjuster, and the fact that adding the adjuster to the lawsuit would not add any benefit to plaintiff other than destroying diversity jurisdiction, the court could find no evidence that plaintiff genuinely intended to pursue an action against the adjuster.[13]

17.     Similarly, this Court should also look past Plaintiff's cursory and general pleadings against Malish and find he was improperly and/or fraudulently joined for the sole purpose of defeating removal on diversity grounds, as this matter is an insurance coverage dispute in which he cannot be liable as a matter of law, and Plaintiff would gain no benefit from adding him other than to defeat diversity jurisdiction.

18.     There is complete diversity of citizenship between Plaintiff Don Strange of Texas, Inc. and the Defendant, The Cincinnati Insurance Company. Therefore, removal is proper under 28 U.S.C. §1332 and this Court has jurisdiction over these proceedings.

### III.
### AMOUNT IN CONTROVERSY

19.     The monetary relief sought by Plaintiff exceeds the minimum jurisdictional amount of $75,000.

20.     Plaintiff pleads in its Original Petition that it seeks monetary relief against CIC for more than $1,000,000.00.[14] On the face of the pleading, the amount in controversy between the Plaintiff and Defendant exceeds $75,000.00, exclusive of interest and costs.

---

[12] *See, Plascencia v. State Farm*, No. 4:14-CV-00524-A (N.D. Tex. Sept. 25, 2014). (finding fraudulent joinder).
[13] *Id.*
[14] *See* Exhibit "1" Plaintiff's Original Petition at Section IV, paragraph 2.

**IV.**
**PROCEDURAL REQUIREMENTS FOR REMOVAL**

21.     Defendant files this Notice of Removal within 30 days of July 8, 2020, the date they received Plaintiff's Original Petition, which was the first pleading instituting this action against it, and within the 1 year period set forth in 28 U.S.C. §1446(c).[15] Defendants file this Notice of Removal without waiving any objections, exceptions or defenses to Plaintiff's Original Petition.

22.     This Court embraces the locality in which the state court action is now pending and, thus, is a proper forum for this action pursuant to 28 U.S.C. §1441(a).

23.     In accordance with 28 U.S.C. §1446(d), a copy of this Notice of Removal is being served on all parties, and a copy is being filed with the Clerk of the 224th Judicial District Court of Bexar County, Texas.[16]

24.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the following documents are being submitted with this Notice of Removal: (a) an index of all documents filed in the state court; (b) a copy of the docket sheet in the state court action; (c) each document filed in the state court action; (d) a Certificate of Interested Parties and Corporate Disclosure Statement.

25.     Defendant filed and presented herewith the sum of $400 to the Clerk of the United States District Court for the Western District of Texas as required by this Court with the Original Notice of Removal filed on August 3, 2020.

26.     If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a memorandum of law, evidence, and oral argument in support of the Notice and the removal of this action.

---

[15] *See* Receipt of Plaintiff's Original Petition via Certified Mail to CIC attached herein as Exhibit "4".
[16] *See* Notice to State Court of Removal, attached herein as Exhibit "5".

27.     WHEREFORE, Defendant prays the Court hereby remove the state court action from the 224th Judicial District Court of Bexar County, Texas to the United States District Court for the Western District of Texas San Antonio Division.

Respectfully submitted,

 /s/ S. Jan Hueber
**S. Jan Hueber**
State Bar No. 20331150
Hueber@litchfieldcavo.com
**Nicholas Rodriguez (***motion for pro hac admission to be filed***)**
State Bar No. 24094190
RodriguezN@litchfieldcavo.com

**LITCHFIELD CAVO, LLP**
100 Throckmorton St., Ste. 500
Fort Worth, Texas 76102
Telephone: (817) 945-8025
Facsimile: (817) 753-3232

**ATTORNEYS FOR DEFENDANT**
**THE CINCINNATI INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above pleading was served on this the 3rd day of August, 2020, on all counsel of record, in accordance with the Federal Rules of Civil Procedure.

 /s/ S. Jan Hueber
**S. Jan Hueber**

# Exhibit 1

FILED
6/24/2020 2:44 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Martha Medellin

CAUSE NO. **2020CI11482**

| | | |
|---|---|---|
| DON STRANGE OF TEXAS, INC. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | 224th   JUDICIAL DISTRICT |
| | § | |
| | § | |
| CINCINNATI INSURANCE COMPANY | § | |
| and JOHNATHAN ANDREW MALISH | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, DON STRANGE OF TEXAS, INC., and files this Original Petition against Defendants CINCINNATI INSURANCE COMPANY ("Cincinnati") and JOHNATHAN ANDREW MALISH ("Adjuster" or "Malish") for causes of action would respectfully show the Court the following:

### I. DISCOVERY LEVEL

Pursuant to rule 190 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under Level 3.

### II. VENUE

Venue is appropriate in Bexar County, Texas because all or part of the conduct giving rise to the causes of action were committed in Bexar County, Texas and the Plaintiff and property which is the subject of this suit are located in Bexar County, Texas.

### III. PARTIES

Plaintiff resides in Bexar County, Texas.

Defendant Cincinnati is in the business of insurance in the State of Texas. The insurance business done by Cincinnati in Texas includes, but is not limited to, the following:

- The making and issuing of contracts of insurance with the Plaintiff;

- The taking or receiving of application for insurance, including the Plaintiff's application for insurance;

- The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiff; and

- The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiff.

Defendant, CINCINNATI INSURANCE COMPANY, a foreign insurance carrier, organized and existing under the laws of the State of Ohio and authorized to conduct business in Texas, whose home office/principal business office is 6200 South Gilmore Road, Fairfield, Ohio 45014-5141, may be served with process thought its agent for service, c/o National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136 via Certified Mail Return Receipt Requested.

Defendant, JOHNATHAN ANDREW MALISH, is an Adjuster and he may be cited with process at 31872 Cast Iron Cv, Bulverde, Texas 78163-4045 via Certified Mail Return Receipt Requested.  The Adjuster engages in the business of insurance in Texas.

### IV. NATURE OF THE CASE; RELIEF SOUGHT

This is a first-party insurance case stemming from The Cincinnati Insurance Company's failure to provide insurance coverage for the losses sustained and expenses incurred by Plaintiff because of the ongoing Coronavirus (COVID-19) pandemic.

Plaintiff seeks damages for breach of contract, violations of the Texas Insurance Code, and common law bad faith.  Plaintiff also seeks its attorney's fees, statutory penalties, costs of court and pre- and post-judgment interest. As required by Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $1,000,000.

## V. FACTUAL BACKGROUND

For many years, Don Strange of Texas, Inc. has owned and operated a full-service catering and event-management business in the San Antonio metropolitan area.  Plaintiff's operations have been, and continue to be, suspended and threatened by the novel coronavirus, SARS-CoV-2, which causes the infectious disease COVID-19.

Plaintiff owns a commercial property located at 1551 Bandera Road, San Antonio, Texas 78228 (the "Property").  Plaintiff utilizes the Property as an office and sales space, storage space, and food-preparation area.  Plaintiff manages and caters events at various venues throughout South Texas and beyond.  In return for the payment of a premium, Cincinnati issued a policy of insurance, numbered EPP0406170 (the "Policy"), to Plaintiff. The Policy which was effective from October 1, 2019 through October 1, 2020, covered the Plaintiff's Property against all risks of loss, except for those risks that are expressly and specifically excluded.  The coverage includes The Cincinnati Insurance Company's Building and Personal Property Coverage Form, Cinciplus Commercial Property Power XC+ (Expanded Coverage Plus) Endorsement, and The Cincinnati Insurance Company's Business Income (and Extra Expense) Coverage Form.

In early 2020, Plaintiff was forced to suspend or reduce business due to COVID-19 and the ensuing orders issued by civil authorities governing The United States, The State of Texas, The City of San Antonio, and Bexar County mandating the suspension of non-essential businesses. Losses due to COVID-19 are a Covered Cause of Loss under the Cincinnati policies with the Building Personal Property Coverage Form, the Cinciplus Commercial Property Power XC+ (Expanded Coverage Plus) Endorsement, and the Business Income (and Extra Expense) Coverage Form.

*The Policy at Issue*

The Cincinnati Insurance Company's coverage forms provide "Business Income" coverage, which promises to pay for actual loss due to the necessary suspension of operations caused by accidental physical loss or accidental physical damage to the covered property.

The Cincinnati Insurance Company's coverage forms also provide "Civil Authority" coverage, which promises to "pay for the actual loss of 'Business Income" sustained "and necessary Extra Expense" sustained "caused by action of civil authority which prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property other than the Covered Property, the civil authority prohibits access to the area immediately surrounding the damaged property, and "the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage . . . ."

The Cincinnati Insurance Company's coverage forms issued to Plaintiff provide "Business Income from Dependent Properties" coverage, which promises to pay for loss of business income sustained due to the necessary suspension of Plaintiff's operations during a period of restoration at a dependent property.  A "dependent property" is defined by the policy as "property operated by others whom you depend on to: (a) Deliver materials or services to you, or to others for your account (Contributing Locations) . . .; (b) Accept your products or services; . . . or (d) Attract customers to your business."  The locations at which events managed and/or catered by Plaintiff are held constitute dependent properties as defined by the Policy.  Most, if not all, of these locations were subject to orders of civil authority which prohibited gatherings of people.

In The Cincinnati Insurance Company's coverage forms, Cincinnati also agreed to pay necessary Extra Expense that Plaintiff sustained during the "period of restoration" that Plaintiff

would not have sustained if there had been no direct loss to property caused by or resulting from a covered cause of loss.

Unlike some policies that provide Business Income (also referred to as "business interruption") coverage, The Cincinnati Insurance Company's coverage forms do not include, and are not subject to, any exclusion for losses caused by viruses or communicable diseases.

Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Business Income from Dependent Properties, Civil Authority, and Extra Expense provisions of the Policy.

**COVID-19 and the Covered Cause of Loss**

Coronavirus (COVID-19) is a highly contagious virus that has rapidly spread and continues to spread across the United States.  COVID-19 is spread by a number of methods, including "community spread," meaning that some people have been infected and it is not known how or where they became exposed.  Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

The CDC has reported that a person can become infected with COVID-19 by touching a surface or object (like a fork, plate, table, or chair) that has the virus on it, and then touching their own mouth, nose or eyes.  More specifically, COVID-19 infections are spread through droplets of different sizes which can be deposited on surfaces or objects.  To reduce the spread of the disease, the CDC has recommended that businesses clean and disinfect all surfaces, prioritizing the most frequently touched surfaces.

Even prior to the World Health Organization's declaring COVID-19 a pandemic on March 11, 2020, the American public grew wary of frequenting public places and attending large

gatherings. Additionally, the presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's Property (the "Closure Orders"). The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability and willingness to host and attend events, including catered events and meals.

**The Closure Orders**

On March 11, 2020, the World Health Organization declared the COVID-19 virus outbreak a pandemic (widespread epidemic).

Shortly thereafter, on March 13, 2020, a Declaration of State of Disaster was issued by Texas Governor Abbot to take additional steps to prepare for, respond to, and mitigate the spread of SARS-CoV-2. On the same date, City of San Antonio and Bexar County issued orders prohibiting mass gatherings of more than 500 people.

Also on March 16, 2020, both the City of San Antonio and Bexar County issued orders prohibiting mass gatherings of more than 50 people. Within the next two days, the City of San Antonio and Bexar County issued orders restricting gatherings to ten people or less.

Any question as to whether Plaintiff was required to temporarily suspend its business operations was answered when, on March 19, 2020, Texas Governor Abbott issued a Public Health Disaster Declaration and Executive Order that, among other things, prohibited Texans from gathering in groups of ten or more people, and thereby required that Plaintiff close its business office and required cancellation of all of Plaintiff's scheduled events.

That same day, the Texas Commission of the Department of the State Health Services issued a proclamation, pursuant to Texas Health and Safety Code § 81.002, which (1) declared a

public health disaster for the entire State of Texas; and then (2) ordered that everyone in Texas "shall act responsibly to prevent and control communicable disease." The Order then listed several standards of responsible actions to "reduce and delay the spread of COVID-19," including:

- "Limit as much as possible close contact with other people. Stay six feet away."

- "Do not gather in social groups of more than ten (10) individuals."

- "Limit trips into the public to essential outings. Traveling to work, the grocery store, the pharmacy or to seek medical care would be considered essential trips."

- "Restaurants should not allow dine-in options, either inside or outside."

On March 23 and 24, 2020, Bexar County issued a "Stay Home Stay/Work Safe" order.

On March 31, 2020, the Texas Governor Abbott signed an executive order for the public to stay home and closing all "non-essential" businesses beginning April 2nd through April 30th of 2020. The City of San Antonio and Bexar County extended their "Stay Home/Work Safe" order until June 4, 2020. The described purposes of the Orders are to protect the "health, safety and welfare" of Bexar County and Texas residents, and to slow the spread of COVID-19 by "minimizing social gatherings" and "minimize in-person contact." The State of Texas, the City of San Antonio, Bexar County, and surrounding counties have issued subsequent orders minimizing social gatherings and in-person contact.

According to the Texas Department of Health and Human Services, COVID-19 has been and continues to be present in Bexar County and the surrounding areas. As of June 22, 2020, the City of San Antonio reported there have been between 151-310 confirmed cases in the zip code area where Plaintiff's business office is located.[1]

---

[1] https://covid19.sanantonio.gov/About-COVID-19/Dashboards-Data/Surveillance

Plaintiff was already enduring substantial income losses and had to begin laying off staff, when on March 13, 2020, the Texas governor and the City of San Antonio began issuing orders limiting gatherings of 500 or more people, which quickly expanded to limit gatherings to ten people or less.  All of Plaintiff's catering contracts were either cancelled, postponed indefinitely, or postponed but later cancelled. The pandemic and health crises have resulted in Plaintiff suffering a physical loss of the Covered Property, and suspension of its business that is covered loss under the Business Interruption and Extra Expense, and Business Interruption to Dependent Property provisions of the Policy.  Coverage for Plaintiff's losses is also available under Civil Authority coverage under the Policy.

**Cincinnati Wrongfully Denies Coverage for Plaintiff's Loss**

In early March, 2020, Plaintiff timely provided notice of claim under the Policy to Cincinnati.

On May 1, 2020, Cincinnati issued a coverage decision letter formally denying Plaintiff's claim and reserving its rights under the policy.

Plaintiff has performed al of their obligations under the Policy, including but not limited to the payment of premiums and timely reporting of claims.  Therefore, the Policy has been in effect since October 1, 2019- without interruption.

The Policy pays for direct physical loss to the Covered Property as well as business income and extra expenses incurred due to the necessary suspension of operations.  The Policy also pays for losses incurred as a result of business interruption caused by an order from a civil authority.

Cincinnati's conclusory position that the COVID-19 does not constitute direct physical damage, and thus no coverage exists for Plaintiff's forced suspension of business operations and business interruption is not supported by the Policy, or the facts.

Direct physical loss can exist without actual structural damage to property.  In analogous circumstances to the COVID-19 agent, the presence of harmful substances at or on a property can constitute property damage or direct physical loss that triggers first party property damage.  For instance, ammonia accidentally released into a facility, renders the building unsafe until it can be removed: covered property damage has occurred.  If the presence of harmful substances renders the property uninhabitable or unstable, the coverage requirement of direct physical loss as a necessary condition has been met.  It has consistently been held that the presence of a dangerous substance in a property constitutes "physical loss or damage."

At the very least, Plaintiff suffered a physical loss of the covered property as a result of the COVID-19 coronavirus and the mandated orders and actions taken to limit the impact of the pandemic.

Plaintiff clearly suffered a loss of use of covered property because Plaintiff was unable to operate its business office and unable to manage off-site events in areas also affected by COVID-19 and by orders of civil authorities.

Moreover, unlike many commercial property policies available on the market, the Policy sold by Cincinnati did not include an exclusion for loss caused by a virus.  The Policy has rules and conditions regarding bacteria, but it is undisputed that a virus is not a bacterium.

Cincinnati, and its adjuster Malish, also rely upon a convoluted interpretation of the Policy's definition of "pollutant" to support their erroneous position that the presence of coronavirus is a pollutant excluded from coverage under the Policy.

The carrier assigned the claim to Malish, among others, to investigate, report on and adjust the loss.  When Malish first contacted Plaintiff by telephone, he only spoke to Plaintiff for

approximately ten minutes, which is an inadequate amount of time to address and investigate such a novel and significant claim.

Plaintiff provided information to Malish and opportunities for Malish to inspect the Covered Property.   Once Plaintiff supplied Malish with all requested information on April 29, 2020, Malish issued the denial letter less than 48 hours later, on May 1, 2020. Malish's rapid decision indicates that either he was predisposed to deny the claim regardless of the  requested information, or he made the claim decision hastily, without thoroughly considering and confirming the information supplied by Plaintiff.

The Insurance Defendant and Malish also failed to investigate possible coverage for Plaintiff's loss pursuant to the Policy's Business Income from Dependent Properties provision when such coverage for Plaintiff's loss was reasonably clear and failed to even address such coverage in the May 1, 2020, denial letter to Plaintiff.

The Insurance Defendant and Adjuster have failed and refused to pay Plaintiff in accordance with its promises under the Policy.

Plaintiff has suffered a covered loss under the Policy which has not been paid, even though the amounts are well-established and have been provided to the Insurance Defendant and the Adjuster.

The Insurance Defendant and the Adjuster have failed to make an attempt to settle Plaintiff's claim in a fair manner, although the insurer's liability to the Plaintiff under the Policy is without dispute. This conduct is a violation of Tex. Ins. Code Sec. 541.060(a)(2)(A).

The Insurance Defendant and the Adjuster have failed to explain the reasons for its denial. The Insurance Defendant and the Adjuster have failed to offer Plaintiff adequate compensation without promptly providing a reasonable explanation of the basis in law or fact for the denial of

Plaintiff's claims The Insurance Defendant and Adjuster did not communicate that any future settlements or payments would be forthcoming to pay the entire losses covered under the Policy. This conduct violates Tex. Ins. Code Sec. 541.060(a)(3).

The Insurance Defendant refused to fully compensate Plaintiff under the terms of the Policy even though the Insurance Defendant failed to conduct a reasonable investigation. The Insurance Defendant and the Adjuster performed a result-oriented investigation of Plaintiff's claim which resulted in an unfair, biased and inequitable evaluation of Plaintiff's losses. This conduct is a violation of Tex. Ins. Code Sec. 541.060(a)(7).

The Insurance Defendant and the Adjuster forced Plaintiff to file this suit by offering substantially less than the amount of covered damages.  This conduct violates Texas Insurance Code § 542.003(b)(5).

The Insurance Defendant failed to meet its obligation under the Texas Insurance Code regarding payment of the claim without delay. This conduct is a violation of Tex. Ins. Code Sec. 542.058.

## VI. Claims Against Cincinnati Insurance Company

**Declaratory Judgment.**  Plaintiff re-alleges the foregoing paragraphs.  Pursuant to the Texas Declaratory Judgment Act, Plaintiff is entitled to a declaration that the Policy provides coverage for Plaintiff's business interruption loss, less only a deductible, among other things. In the alternative, Plaintiff asserts that the Policy is ambiguous and must be interpreted in favor of coverage and against the Insurance Defendant.

**Breach of Contract.**  Plaintiff re-alleges the foregoing paragraphs.  The acts and omissions of the Insurance Defendant and its agents constitute a breach and/or anticipatory breach of the Insurance Defendant's contract with Plaintiff. Plaintiff has satisfied all conditions precedent to the

fulfillment of its contractual demands.  Accordingly, additionally or in the alternative, Plaintiff brings an action for breach of contract against the Insurance Defendant pursuant to Texas statutory and common law, including Chapter 38 of the Texas Civil Practice and Remedies Code, and seek all of its damages for such breach, including actual damages, consequential damages, attorneys' fees, prejudgment interest, other litigation expenses and costs of court.

**Violations of the Texas Insurance Code.**  Plaintiff re-alleges the foregoing paragraphs. At all pertinent times, the Insurance Defendant was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of the Insurance Defendant and its agents constitute one or more violations of the Texas Insurance Code.  More specifically, the Insurance Defendant has, among other violations, violated the following provisions of the Code:

1. Insurance Code chapter 542, the Prompt Payment Act.

2. Insurance Code chapter 541, section 541.060 by, among other things:

   - failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

   - failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims; and/or

   - refusing to pay Plaintiff's claim without conducting a reasonable investigation.

As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff has suffered damages including, without limitation, actual damages, economic damages, and consequential damages.  Moreover, one or more of the foregoing acts or omissions were "knowingly" made, entitling Plaintiff to seek treble damages pursuant to the Insurance Code.  The Insurance Defendant has also violated the Prompt Payment Act, and Plaintiff seeks statutory damages as a penalty, plus reasonable and necessary attorney's fees incurred as a result of these violations.

"**Common Law Bad Faith.**"  Plaintiff re-alleges the foregoing paragraphs.  The Insurance Defendant has refused to pay a claim after liability has become reasonably clear. The Insurance Defendant has refused to pay, delayed in paying or offered grossly inadequate and unconscionable sums to settle the claims submitted by Plaintiff.  This constitutes a breach of its common law duty of good faith and fair dealing' *i.e.*, it is acting in "bad faith."

Moreover, the Insurance Defendant has "investigated" and "adjusted" Plaintiff's claim in a malicious, intentional, and/or grossly negligent fashion, and Plaintiff is entitled to extra-contractual damages, including exemplary damages.  Plaintiff has sustained a serious business interruption loss as a result of the Insurance Defendant's refusal to honor the Policy. The Insurance Defendant is well aware that its actions involve an extreme risk that Plaintiff will suffer financial damage as a result of its refusal to honor its obligations, yet it is consciously indifferent to Plaintiff's rights.   Plaintiff is entitled to recover its actual damages, consequential damages, punitive damages, and pre- and post-judgment interest.

## VII. CLAIMS AGAINST THE ADJUSTER

**Violations of the Texas Insurance Code.**  Plaintiff re-alleges the foregoing paragraphs. At all pertinent times, the Adjuster, Malish, was engaged in the business of insurance as defined by the Texas Insurance Code. The acts and omissions of Malish and/or his agents constitute one or more violations of the Texas Insurance Code.  More specifically, Malish has, among other violations, violated Texas Insurance Code chapter 541, section 541.060 by, among other things:

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which their liability has become reasonably clear;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims; and/or

- refusing to pay Plaintiff's claim without conducting a reasonable investigation.

The Insurance Defendant assigned the loss and the claim to Malish who was at all pertinent times the agent of the Insurance Defendant, through both actual and apparent authority. The acts, representations and omissions of the Adjuster are attributed to the Insurance Defendant.

Despite having been assigned the claim, and despite being given authority and instructions to adjust and evaluate the claim, Malish failed and refused to adjust the claim properly. Instead, Malish just went through the motions on a claim he was pre-determined to deny.  He conducted a minimal investigation and looked for ways to deny Plaintiff's claim.  For example, Malish relied upon his convoluted interpretation of the definition of "pollutants" in the Policy as a basis to exclude coverage.  Malish also failed to investigate possible coverage for Plaintiff's loss pursuant to the Policy's Business Income from Dependent Properties provision when such coverage for Plaintiff's loss was reasonably clear and failed to address such coverage in his denial letter to Plaintiff.  Malish failed to request from Plaintiff the relevant information regarding the financial impact of the business interruption, failed to fully investigate the occurrence made the basis of claim, failed to provide a reasonable explanation of the basis in law or fact for the denial of Plaintiff's claims, and failed to make reasonable recommendations to the Insurance Defendant.

Plaintiff provided information regarding the loss and the claim to Malish, including sufficient information for Malish to adjust and evaluate the loss. As a result, to this date, Plaintiff has not received full payment for the claim.

Malish's actions were negligent, reckless, willful and intentional, and were the proximate and producing cause of damages to the Insured.

As a result of the foregoing conduct, which was and is the producing cause(s) of injury and damage to Plaintiff, Plaintiff have suffered damages including, without limitation, actual damages, economic damages, and consequential damages.  Moreover, one or more of the foregoing acts or

14

omissions were "knowingly" made, entitling Plaintiff to seek treble damages pursuant to the Insurance Code.

Upon information and belief, Cincinnati relied solely on Malish's recommendation in making payment on Plaintiff's claim.  Thus, Malish was responsible for scoping, adjusting, and estimating the claim. Malish's failure to properly investigate and adjust the claim directly led to the denial of Plaintiff's claim. As a result of Malish's conduct, Cincinnati denied the claim.

**Attorney's fees.**  Plaintiff re-alleges the foregoing paragraphs.  Plaintiff has been required to engage the services of the undersigned attorneys and have agreed to pay his attorneys a reasonable fee for services expended and to be expended in the prosecution of his claims against the Cincinnati through the trial court and all levels of the appellate process.  Plaintiff seeks the recovery of all of his attorney's fees and expenses.

With respect to all causes of action asserted herein, Plaintiff seeks the recovery of prejudgment and post-judgment interest.

## VIII. CONDITIONS PRECEDENT

All conditions precedent for Plaintiff to recover under the Policy have been or will be met.

## IX. JURY DEMAND

Plaintiff request that a jury be convened to try the factual issues in this action.

## X. REQUEST FOR DISCLOSURE

Pursuant to the Texas Rules of Civil Procedure 194, Plaintiff request that Defendants provide the information required in a Request for Disclosure.

## XI. REQUEST FOR PRODUCTION TO CINCINNATI INSURANCE COMPANY

Produce Cincinnati's complete claim file for Plaintiff's home relating to or arising out of any damage which occurred.

Produce all emails, notes, and other forms of communication between Cincinnati, its agents, Adjusters, employees, or representatives and Johnathan Malish, and/or their agents, Adjusters, representatives or employees relating to, mentioning, concerning or evidencing the Plaintiff's loss which is the subject of this suit.

## XII. REQUEST FOR PRODUCTION TO JOHNATHAN MALISH

Produce Malish's complete claim or adjusting file for Plaintiff's loss relating to or arising out of any damage which occurred.

Produce all emails, notes,  and other forms of communication between Cincinnati, its agents, Adjusters, employees, or representatives and Johnathan Malish, and/or their agents, Adjusters, representatives or employees relating to, mentioning, concerning or evidencing the Plaintiff's home which is the subject of this suit.

## PRAYER

WHEREFORE, Plaintiff seeks the following relief:

A.      The Court's declaration that the Policy provides coverage for the damage resulting from the loss, less only a deductible;

B.      Alternatively, a ruling that the Policy is ambiguous and must be interpreted in favor of coverage and in favor of Plaintiff;

C.      Damages against the Insurance Defendant for breach of contract, including actual damages, consequential damages, attorneys' fees, pre- and post-judgment interest, other litigation expenses and costs of court;

D.      Penalty in the statutory amount of the damages for violations of the Prompt Payment Act;

16

E.      Damages against the Insurance Defendant and Adjuster, jointly and severally, for other violations of the Texas Insurance Code, including without limitation economic damages, actual damages, consequential damages, treble damages, and reasonable and necessary attorneys' fees;

F. Damages against the Insurance Defendant and the Adjuster, jointly and severally, for breach of the duty of good faith and fair dealing, including actual damages, consequential damages, punitive damages and pre- and post-judgment interest; and

H. Plaintiff also seeks all other financial relief and rulings to which they may be legally or equitably entitled.

Respectfully submitted,

PEARSON LEGAL, P.C.
425 Soledad, Suite 600
San Antonio, Texas 78205
Telephone:  (210) 732-7766
Facsimile:  (210) 229-9277

By:

MATTHEW R. PEARSON
State Bar No. 00788173
mpearson@pearsonlegalpc.com
TRACIE CONNER
State Bar No. 24074066
tconner@pearsonlegalpc.com

**ATTORNEYS FOR PLAINTIFF**

17

# Exhibit 2

U U O 5 3 O U 2 9 5 9

FILED
In the Office of the
Secretary of State of Texas

OCT 15 1986

Clerk II-G
Corporations Section

## ARTICLES OF INCORPORATION
### AMENDED AND RESTATED
### DON STRANGE OF TEXAS, INC.

Pursuant to the provisions of Articles 4.04 and 4.07 of the Texas Business Corporation Act, the undersigned corporation amends and restates its Articles of Incorporation. The amendments to and restatement of the Articles of Incorporation were adopted with the unanimous consent of the board of directors and the vote of more than two-thirds of the shareholders of the corporation on October 9, 1986 [4.02(3), Texas Business Corporation Act].

The shareholders of the corporation, number of shares owned, and vote are as follows:

| Name | # of Shares | Vote for Amendment |
|------|-------------|--------------------|
| Donald E. Strange | 510 | Yes |

(Mr. Strange is the only shareholder)

The holder of all of the shares outstanding voting in favor of the amendment and restatement have signed a consent in writing adopting said amendment and restatement. As required by Article 4.07(c)(1), each amendment to the Corporation's articles has been effected in accordance with the provisions of the Texas Business Corporation Act.

### ARTICLE ONE

The name of the corporation is Party House, Inc. The name of the corporation is changed to, and it shall be, DON STRANGE OF TEXAS, INC.

### ARTICLE TWO

The period of its duration is perpetual.

NOTE: No change

### ARTICLE THREE

The purpose for which the corporation is organized is the transaction of any or all lawful business for which a corporation may be incorporated under the Texas Business Corporation Act.

NOTE: Expanded to include all organizational purposes permitted under the Act.

## ARTICLE FOUR

The aggregate number of shares which the corporation has authority to issue is 500,000 common shares (500,000) which shall have a par value of $1 each.

NOTE: The number of authorized shares has been changed from 1,000 shares to 500,000 shares. The par value of each share remains the same.

## ARTICLE FIVE

The corporation is an existing and viable Corporation which did not commence its business operation until it had received consideration of the value of one thousand dollars ($1,000), consisting of money, labor done or property actually received.

NOTE: This is a statement in compliance with Article 3.05 of the Texas Business Corporation Act.

## ARTICLE SIX

The address of the registered office of the corporation is 5717 Northwest Parkway, San Antonio, Texas 78249, and the name of its registered agent at that address is Larry W. Gibbs.

NOTE: This article changes the corporation's registered agent and registered address, and is in compliance with Article 2.09 of the Texas Business Corporation Act.

## ARTICLE SEVEN

The number of directors constituting the existing board of directors is two, and the names and addresses of the persons who are serving or who are to serve as directors until the next annual meeting of the shareholders, or until successors are elected and qualified are:

| | |
|---|---|
| Donald E. Strange | 12503 Morgans Ridge<br>San Antonio, Texas  78230 |
| Frances E. Strange | 12503 Morgans Ridge<br>San Antonio, Texas  78230 |

The Corporation's shareholders shall have the right in the Corporation's bylaws to determine and prescribe from time to time the number of directors and terms of office, as well as all other matters relative to the service of a director of the Corporation.

NOTE: This is a statement made in conformity with Article 2.32 of the Texas Business Corporation Act.

## ARTICLE EIGHT

No shareholder or other person shall have any pre-emptive right whatsoever.

NOTE: This is an addition to the Articles of Incorporation which negates any preemptive right provided by Article 2.22-1 of the Texas Business Corporation Act.

## ARTICLE NINE

(A) <u>Validity</u>. If paragraph (B) is satisfied, no contract or other transaction between the corporation and any of its directors, officers or security holders, or any corporation or firm in which any of them are directly or indirectly interested, shall be invalid solely because of this relationship or because of the presence of the director, officer or security holder at the meeting authorizing the contract or transaction, or his participation or vote in the meeting or authorization.

(B) <u>Disclosure, Approval; Fairness</u>. Paragraph (A) shall apply only if:

(1) the material facts of the relationship or interest of each such director, officer or security holder is known or disclosed:

(a) to the board of directors and it nevertheless authorizes or ratifies the contract or transaction by a majority of the directors present, each such interested director to be counted in determining whether a quorum is present but not in calculating the majority necessary to carry the vote; or

(b) to the shareholders and they nevertheless authorize or ratify the contract or transaction by a majority of the shares present, each such interested person to be counted for quorum and voting purposes; or

(2) the contract or transaction is fair to the corporation as of the time it is authorized or ratified by the board of directors or the shareholders.

(C) <u>Non-Exclusive</u>. This provision shall not be construed to invalidate a contract or transaction which would be valid in the absence of this provision.

NOTE: Article Nine is a new provision included in the Corporation's Articles of Incorporation for the first time.

## ARTICLE TEN

(A) <u>Persons</u>. The corporation shall indemnify, to the extent

0 0 0 5 3 8 0 2 9 6 2

provided in paragraphs (B), (D) or (F):

(1) any person who is or was a director, officer, agent or employee of the corporation, and

(2) any person who serves or served at the corporation's request as a director, officer, agent, employee, partner or trustee of another corporation or of a partnership, joint venture, trust or other enterprise.

(B) Extent - Derivative Suits. In case of a suit by or in the right of the corporation against a person named in paragraph (A) by reason of his holding a position named in paragraph (A), the corporation shall indemnify him if he satisfies the standard in paragraph (C), for expenses (including attorneys' fees but excluding amounts paid in settlement) actually and reasonably incurred by him in connection with the defense or settlement of the suit.

(C) Standard - Derivative Suits. In case of a suit by or in the right of the corporation, a person named in paragraph (A) shall be indemnified only if:

(1) he is successful on the merits or otherwise, or

(2) he acted in good faith in the transaction which is the subject of the suit, and in a manner he reasonably believed to be in, or not opposed to, the best interests of the corporation. However, he shall not be indemnified in respect of any claim, issue or matter as to which he has been adjudged liable for negligence or misconduct in the performance of his duty to the corporation unless (and only to the extent that) the court in which the suit was brought shall determine, upon application, that despite the adjudication but in view of all the circumstances, he is fairly and reasonably entitled to indemnity for such expenses as the court shall deem proper.

(D) Extent - Nonderivative Suits. In case of a suit, action or proceeding, (whether civil, criminal, administrative or investigative), other than a suit by or in the right of the corporation, together hereafter referred to as a nonderivative suit, against a person named in paragraph (A) by reason of his holding a position named in paragraph (A), the corporation shall indemnify him if he satisfies the standard in paragraph (E), for amounts actually and reasonably incurred by him in connection with the defense or settlement of the nonderivative suit as

(1) expenses (including attorneys' fees),

(2) amounts paid in settlement,
(3) judgments, and

(4) fines.

(E)  <u>Standard - Nonderivative Suits</u>.  In case of a nonderivative
suit, a person named in paragraph (A) shall be indemnified only if:

(1)  he is successful on the merits or otherwise, or

(2)  he acted in good faith in the transaction which is the
subject of the nonderivative suit, and in a manner he reasonably
believed to be in, or not opposed to, the best interests of the
corporation and, with respect to any criminal action or proceeding, he
had no reason to believe his conduct was unlawful.  The termination of
a nonderivative suit by judgment, order, settlement, conviction, or
upon a plea of <u>nolo contendere</u> or its equivalent shall not, of itself,
create a presumption that the person failed to satisfy the standard of
this paragraph (E)(2).

(F)  <u>Determination That Standard Has Been Met</u>.  A determination
that the standard of paragraph (C) or (E) has been satisfied may be
made by a court.  Or, except as stated in paragraph (C)(2) (2d
sentence), the determination may be made by:

(1)  a majority of the directors of the corporation (whether
or not a quorum) who were not parties to the action, suit or
proceeding, or

(2)  independent legal counsel (appointed by a majority of
the directors of the corporation, whether or not a quorum, or elected
by the shareholders of the Corporation) in a written opinion, or

(3)  the shareholders of the corporation.

(G)  <u>Proration</u>.  Anyone making a determination under paragraph
(F) may determine that a person has met the standard as to some
matters but not as to others, and may reasonably prorate amounts to be
indemnified.

(H)  <u>Advance Payment</u>.  The corporation may pay in advance any
expenses (including attorneys' fees) which may become subject to
indemnification under paragraphs (A)-(G) if:

(1)  the board of directors authorizes the specific payment,
and

(2)  the person receiving the payment undertakes in writing
to repay unless it is ultimately determined that he is entitled to
indemnification by the corporation under paragraphs (A)-(G).

(I)  <u>Nonexclusive</u>.  The indemnification provided by paragraphs
(A)-(G) shall not be exclusive of any other rights to which a person
may be entitled by law, bylaw, agreement, vote of shareholders or
disinterested directors, or otherwise.

U 0 0 5 3 8 0 2 9 6 4

(J)  Underline{Continuation}.  The  indemnification  and  advance  payment provided by paragraphs (A)-(H) shall continue as to a person who has ceased to hold a position named in paragraph (A) and shall inure to his heirs, executors and administrators.

(K)  Underline{Insurance}.  The  corporation  may  purchase  and  maintain insurance on behalf of any person who holds or who has held any position named in paragraph (A), against any liability incurred by him in any such position, or arising out of his status as such, whether or not the corporation would have power to indemnify him against such liability under paragraphs (A)-(H).

(L)  Underline{Reports}.  Indemnification payments, advance payments, and insurance purchases and payments made under paragraphs (A)-(K) shall be reported in writing to the shareholders of the corporation with the next notice of annual meeting, or within six months, whichever is sooner.

NOTE:  Article  Ten  is  a  new  provision  included  in  the Corporation's Articles of Incorporation for the first time.

### ARTICLE ELEVEN

In  further  compliance  with  Article  4.04  of  the  Texas  Business Corporation Act, (1) the existing name of the corporation is Party House, Inc.; (2) the amendments evidenced by these articles were adopted by the unanimous consent of both the corporation's board of directors and its stockholders on October 9, 1986; (3) all of the outstanding shares of all classes entitled to vote on these amendments and the restatement voted affirmative; (4) the amendment pertaining to the exchange, reclassification, or cancellation of issued shares is as is specifically stated in these articles (and in particular Article Four); and (5) there shall be no change in the corporation's stated capital or retained earnings, all of which shall be attributed to the new common stock.

DATED the  9  day of  October , 1986.

DON STRANGE OF TEXAS, INC.

By: _____
        President

0 0 0 5 3 8 0 2 9 6 5

```
THE STATE OF TEXAS      §
                        §
COUNTY OF BEXAR         §
```

Before me, a notary public, on this day personally appeared DONALD E. STRANGE, President of Don Strange of Texas, Inc., a Texas corporation, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements therein contained are true and correct.

GIVEN UNDER MY HAND SEAL OF OFFICE, this __9__ day of _October_, 1986.

Nancy L. Rutherford
Notary Public, State of Texas

My Commission Expires: __2-21-89__



NANCY L. RUTHERFORD
My Commission Expires 2-21-89

0 0 0 5 3 8 0 2 9 6 6

## JOINT MEETING OF STOCKHOLDER
## AND DIRECTORS, AND CONSENT TO
## AMENDMENT OF CORPORATION'S CHARTER

The following action is taken by unanimous consent as permitted by Article 9.10 of the Texas Business Corporation Act:

1. The name of the corporation is to be changed from PARTY HOUSE, INC. to DON STRANGE OF TEXAS, INC. We consent to the change and all other changes contained in that certain document entitled "Articles of Incorporation Amended and Restated to Don Strange of Texas, Inc.," acted of even date herewith.

2. Don Strange gives his specific written consent to the use of his name as a part of the name of the corporation.

3. Upon approval of the Texas Secretary of State, the officers of the company shall order new stock certificates and shall reissue all stock in the name of Don Strange of Texas, Inc. Don Strange shall be issued a total of 10,000 shares of common stock, the difference between the 510 total shares now listed and 10,000 shares to have no effect on the paid-in capital or retained earnings of the corporation, but merely to restate the shares owned by Don Strange as a greater number for the purpose of more adequately stating Don Strange's ownership on his personal financial statement.

Dated and Effective: **10/9/1986**

Donald E. Strange, Director and
Owner of all issued and outstanding
stock

Frances Strange, Director

# Exhibit 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| **Case No.:** | 2:20-cv-04423-AB-SK | **Date:** | July 27, 2020 |

| | |
|---|---|
| **Title:** | *Mark's Engine Co. No. 28 Rest., LLC v. Traveler's Indem. Co. of Conn., et al.* |

| | |
|---|---|
| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |

| | |
|---|---|
| Carla Badirian | N/A |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     **[In Chambers] ORDER <u>DENYING</u> PLAINTIFF'S MOTION FOR REMAND [DKT. NO. 22]**

Before the Court is Plaintiff Mark's Engine Company No. 28 Restaurant, LLC's ("Plaintiff") motion for remand. (Dkt. No. 22.) Defendant Travelers Property Casualty Company of America ("Defendant") opposes Plaintiff's motion. (Dkt. No. 26.) The Court found this matter suitable for decision without oral argument and took Plaintiff's motion under submission. (Dkt. No. 32.) For the reasons stated below, the Court **DENIES** Plaintiff's motion for remand.

## I. BACKGROUND

On April 15, 2020, Plaintiff filed its complaint against Traveler's Indemnity Company of Connecticut[1] ("Travelers"), Mayor Eric Garcetti ("Mayor Garcetti"), and Does 1–25 in the Superior Court of the State of California, County of Los Angeles. (Dkt. No. 1-2.)

---

[1] Defendant contends that it was erroneously sued as The Travelers Indemnity Company of Connecticut. (Dkt. No. 26 at 1.)

On May 15, 2020, Travelers removed Plaintiff's suit to this Court. (Dkt. No. 1.) In its notice of removal, Travelers argued that removal was proper because the only non-diverse defendant, Mayor Garcetti, was fraudulently joined, and the amount in controversy exceeds $75,000. (*Id.* at 4–14.) Plaintiff's initial complaint alleged three causes of action: (1) a claim for declaratory relief against all defendants, (2) a claim for breach of implied covenant of good faith and fair dealing against Travelers and Does 1–25, and (3) a claim for *per s*e violation of California Insurance Code Section 790.03 against Travelers and Does 1–25. (Dkt. No. 1-1 at ¶¶ 23–48.)

On May 29, 2020, after Defendant filed a motion to dismiss Plaintiff's initial complaint, Plaintiff filed a First Amended Complaint ("FAC") and the instant motion for remand. (Dkt. Nos. 13, 14, 21, 22.) Plaintiff's FAC alleges the following causes of action: (1) a claim for declaratory relief against all defendants, (2) a claim for breach of contract against Travelers and Does 1–25, (3) a claim for breach of the implied covenant of good faith and fair dealing against Travelers and Does 1–25, and (4) a claim for violation of California's Business & Professions Code § 17200 against Travelers and Does 1–25. (Dkt. No. 21 at ¶¶ 23–55.)

Plaintiff moves to remand this action on the ground that Mayor Garcetti was not fraudulently joined, thus eliminating complete diversity of citizenship among the parties. (Dkt. No. 22 at 1–3.) Plaintiff also moves to remand on the ground that this case raises unsettled questions of state law from which the Court should abstain under the Declaratory Judgment Act. (*Id.* at 3–9.) Finally, Plaintiff argues that this Court should remand based on the *Colorado River* and *Younger* abstention doctrines. (*Id.* at 9–13.)

## II.     LEGAL STANDARDS

### A. Removal Jurisdiction

28 U.S.C. § 1441(a) ("Section 1441") provides that a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. 28 U.S.C. § 1332 ("Section 1332") provides that a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332(a)(1) requires complete diversity, meaning that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S.

61, 68 (1996). Section 1441(b)(2) further limits removal based on diversity jurisdiction to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999), *superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir.2006); *Martinez v. Los Angeles World Airports*, 2014 WL 6851440, at *2 (C.D. Cal. Dec. 2, 2014). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## B. Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (internal citation omitted).

"Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (citing Moore's Federal Practice (1986) ¶ 0.161[2]). In practice, the burden of proving fraudulent joinder is a heavy one, *Gaus*, 980 F.2d at 566, as the defendant must prove fraudulent joinder by clear and convincing evidence. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.1998)).

Despite this high bar, the Ninth Circuit has upheld rulings of fraudulent joinder "where a defendant presents extraordinarily strong evidence or arguments that a plaintiff could not possibly prevail on her claims against the allegedly fraudulently joined defendant." *Grancare*, 889 F.3d at 548. Examples of such

"extraordinarily strong evidence or arguments" include instances where "plaintiff's claims against [an] alleged sham defendant were all predicated on a contract to which the defendant was not a party." *Id.* (citing *United Comput. Sys. Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002))*; see also Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1427 (9th Cir. 1989) ("Defendants are correct that plaintiffs cannot prevail on any claims they seek to bring against the defendants . . . because plaintiffs were not parties to the alleged agreements.").

### C. The Declaratory Judgment Act

The Declaratory Judgment Act ("DJA") provides, in relevant part, that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

The DJA "does not confer jurisdiction, and therefore also does not afford the opportunity to decline it." *Countrywide Home Loans, Inc., v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011). Rather, "federal courts have discretion under the DJA only as to whether to award declaratory relief pursuant to the jurisdiction that they must properly derive from the underlying controversy between the litigants." *Id.*

"There is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). Moreover, when an action for declaratory relief is joined with other claims, "(e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *Id.* (citing *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)). Indeed, the Ninth Circuit has recognized that "[r]emanding only the declaratory component of such an action will frequently produce piecemeal litigation . . . a result which the [DJA] was intended to avoid[.]" *See Snodgrass v. Provident Life and Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998) (citation omitted).

### D. *Colorado River* and *Younger* Abstention Doctrines

#### a. *Colorado River* Abstention Doctrine

"*Colorado River* and its progeny provide a multi-pronged test for determining whether 'exceptional circumstances' exist warranting federal abstention from concurrent federal and state proceedings." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841 (9th Cir. 2017). The Court evaluates eight factors to determine the appropriateness of a stay or dismissal under *Colorado River*, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 842 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). The factors are as follows:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Id.* at 841–42 (quoting *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 978–79 (9th Cir. 2011)).

In applying these factors, the Court must be mindful that "federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them, including in cases involving parallel state litigation." *Id.* (internal quotation marks omitted). "Abdication of the obligation to decide cases can be justified under [*Colorado River*] only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)) (alteration added).

#### a. *Younger* Abstention Doctrine

Abstention pursuant to *Younger* is grounded in a "longstanding public policy against federal court interference with state court proceedings." *Younger v. Harris*, 401 U.S. 37, 43 (1971). The Ninth Circuit has held that a federal court "may

abstain under *Younger* in three categories of cases: "(1) parallel, pending state criminal proceedings, (2) state civil proceedings that are akin to criminal prosecutions, and (3) state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043–44 (9th Cir. 2019) (quoting *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)). If an action falls into one of these three categories, it "must also satisfy a three-part inquiry: the state proceeding must be (1) 'ongoing,' (2) 'implicate important state interests,' and (3) provide 'an adequate opportunity . . . to raise constitutional challenges.'" *Id.* at 1044 (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "If the state proceeding falls into one of the . . . categories and meets the three . . . factors, a federal court may abstain under *Younger* so long as the federal action would have the practical effect of enjoining the state proceedings." *Id.* (internal quotation marks omitted).

## III.  DISCUSSION

### A. Defendant has met its burden of demonstrating that Mayor Garcetti was fraudulently joined

The Court concludes that Defendant has met its burden to show that Mayor Garcetti was fraudulently joined.

Plaintiff contends that the insurance policy in dispute provides coverage for "'Business Income and Extra Expense Coverage' in the event of business closures by order of Civil Authority." (Dkt. No. 22 at 2.) In light of the COVID-19 pandemic, Mayor Garcetti issued an Executive Order on March 15, 2020 that directed all non-essential business in Los Angeles to close. (*Id.*) Plaintiff argues that this triggered Plaintiff's insurance coverage under the policy as Plaintiff was forced to close by order of Civil Authority. (*Id.*) Further, Plaintiff argues that the denial of the policy would not have occurred absent Mayor Garcetti's order, the propriety of which is a significant issue that allegedly must be resolved. (*Id.* at 2– 3.) Accordingly, Plaintiff claims that Mayor Garcetti's joinder was proper. (*Id.* at 3.) Plaintiff also argues that "even if the Court finds that no cause of action exists against Mayor Garcetti in the Complaint as presently plead[ed], Travelers has not shown that Plaintiff cannot amend its pleadings to establish a cause of action against Mayor Garcetti." (*Id.*)

In response, Defendant asserts that "[t]his action turns on a contract between Plaintiff and Travelers, and Mayor Garcetti is not a party to that contract." (Dkt.

No. 26 at 8.) As Defendant correctly indicates in its opposition to Plaintiff's motion, Plaintiff's pleadings clearly show Mayor Garcetti is not a party to the insurance contract in dispute. (*See* Dkt. No. 1-2 at ¶¶ 6, 24.); (*see also* FAC ¶ 6). Although Plaintiff argues that its "complaint clearly alleges a possible claim against [Mayor Garcetti,] as the complaint is seeking declaratory relief regarding the denial of the insurance policy arising from [Mayor Garcetti's] executive orders" (Dkt. No. 27 at 2), seeking a declaratory judgment that a government official's action triggers insurance coverage does not amount to a cause of action against that government official. Moreover, it is well established that a party is fraudulently joined where a "plaintiff's claims against [the] alleged sham defendant [are] all predicated on a contract to which the defendant [is] not a party." *See Grancare*, 889 F.3d at 548 (citing *United Compt. Sys., Inc.*, 298 F.3d at 761). Because Plaintiff's claim against Mayor Garcetti is predicated on a contract to which Mayor Garcetti is not a party, Mayor Garcetti was fraudulently joined.

Plaintiff's remaining arguments with respect to fraudulent joinder are unavailing. Although Plaintiff contends that it could amend its complaint to allege additional causes of action against Mayor Garcetti, including a State Constitutional Takings Claim, (*see* Dkt. No. 22 at 3; Dkt. No. 27 at 2), the Court "determines removability of a complaint at the time of removal . . . [and] declines to consider causes of action that were not pleaded in the operative complaint to determine whether [Mayor Garcetti] is a sham defendant." *See Health Pro Dental Corp. v. Travelers Prop. Cas. Co. of Am.*, CV 17-00637-BRO-SK, 2017 WL 1033970, at *5 n.6 (C.D. Cal. Mar. 17, 2017). With respect to the Plaintiff's sole claim against Mayor Garcetti for declaratory relief, the Court concludes that this claim could not possibly be saved by amendment. *See Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) ("[A] defendant seeking removal based on an alleged fraudulent joinder must . . . show that there is no possibility that the plaintiff could prevail on any cause of action is brought against the non-diverse defendant.").

Because Mayor Garcetti, the only non-diverse defendant in this action, was fraudulently joined, complete diversity of citizenship among the parties is present. Moreover, the Court concludes that the amount-in-controversy requirement is easily met here, and Plaintiff does not seek to remand based on the amount in controversy. (*See* Dkt. No. 1 at 5–9); (*see also* Dkt. No. 22.)

## B. **Abstention pursuant to the Declaratory Judgment Act is unwarranted**

Although the Court has diversity jurisdiction over this action, Plaintiff contends that the Court should abstain from exercising that jurisdiction pursuant to the DJA. (Dkt. No. 22 at 3–9.) However, as Defendant correctly argues in opposition where, as here, "other claims are joined with an action for declaratory relief . . . the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *See Gov't Emps. Ins. Co.*, 133 F.3d at 1225; *see also Scotts Co. v. Seeds, Inc.*, 688 F.3d 1154, 1159 (9th Cir. 2012) (same). Accordingly, because Plaintiff's suit seeks more than declaratory relief, the Court declines to abstain under the DJA.[2] *See Seneca Ins. Co.*, 862 F.3d at 840 ("So long as the suit seeks more than merely declaratory relief . . ., the entire action should be analyzed under the *Colorado River* framework[, not under the *Brillhart* framework.]").

## C. **Abstention pursuant to *Colorado River* and *Younger* is unwarranted**

Plaintiff argues that this Court should abstain from exercising its jurisdiction pursuant to *Colorado River* and *Younger*. (Dkt. No. 22 at 9–13.) The Court addresses each argument in turn.

### a. *Colorado River*

The "exceptional circumstances" that merit abstention pursuant to *Colorado River* are nonexistent here. The first two factors "are irrelevant in this case because the dispute does not involve a specific piece of property and both the federal and state forums are located in Los Angeles." *See R.R. St. & Co., Inc.*, 656 F.3d at 979. Further, the Court concludes that there is no risk of piecemeal litigation and that the state court proceedings identified by Plaintiff will not resolve all issues before

---

[2] Moreover, even assuming that the *Brillhart* factors are applicable here, the Court concludes that these factors do not favor abstention or remand, as Plaintiff has not identified any pending state court proceeding presenting the same issues and the same parties. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical . . . for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").

Court, as the identified state court proceedings involve different parties. Similarly, the Court concludes that the identified state court proceedings will not adequately protect the rights of Defendant, as Defendant is not a party to any of these proceedings. Additionally, "[b]ecause the case[] here involve[s] routine issues of state law, such as breach of [the implied covenant of good faith and fair dealing] . . . this factor does not weigh against jurisdiction." *See R.R. St. & Co.*, 656 F.3d at 980–81. Finally, the Court concludes that concerns of forum shopping do not weigh against exercising jurisdiction, as the Court has diversity jurisdiction over this action and this case was properly removed. *See Id.* at 982 ("[T]he desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III." (quoting *First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 162 (9th Cir. 1997))). Accordingly, the Court declines to abstain from exercising its jurisdiction pursuant to *Colorado River*.

### b. *Younger*

Abstention pursuant to *Younger* is also inappropriate. Here, Plaintiff does not identify any parallel, pending state criminal proceedings, any state civil proceedings akin to a criminal prosecution, or any state civil proceeding that implicate a State's interest in enforcing the order and judgments of its courts. (Dkt. No. 22 at 12–13.) Accordingly, abstention pursuant to *Younger* is improper.

## IV. CONCLUSION

For the reasons stated above, the Court **<u>DENIES</u>** Plaintiff's motion for remand.

**IT IS SO ORDERED**.

Exhibit 4

 CT Corporation

**Service of Process Transmittal**
07/06/2020
CT Log Number 537895079

TO: STEVE CORBLY
THE CINCINNATI INSURANCE COMPANY
6200 S GILMORE RD
FAIRFIELD, OH 45014-5141

RECEIVED

JUL 08 2020

RE: **Process Served in Texas**

FOR: The Cincinnati Insurance Company  (Domestic State: OH)

REGULATORY & COMPLIANCE

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** DON STRANGE OF TEXAS, INC., Pltf. vs. CINCINNATI INSURANCE COMPANY and JOHNATHAN ANDREW MALISH, Dfts.
*Name discrepancy noted.*

**DOCUMENT(S) SERVED:** -

**COURT/AGENCY:** None Specified
Case # 2020CI11482

**NATURE OF ACTION:** Insurance Litigation

**ON WHOM PROCESS WAS SERVED:** C T Corporation System, Dallas, TX

**DATE AND HOUR OF SERVICE:** By Certified Mail on 07/06/2020 postmarked on 07/01/2020

**JURISDICTION SERVED :** Texas

**APPEARANCE OR ANSWER DUE:** None Specified

**ATTORNEY(S) / SENDER(S):** None Specified

**ACTION ITEMS:** SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780128604058

**SIGNED:** C T Corporation System
**ADDRESS:** 208 LaSalle Ave
Suite 814
Chicago, IL 60604

**For Questions:** 866-539-8692
CorporationTeam@wolterskluwer.com

Page 1 of  1 / SP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**CERTIFIED MAIL®**

7019 1120 0001 3173 4505



U.S. POSTAGE >> PITNEY BOWES

ZIP 78204
02 4W
0000350931 JUL 01. 2020

$ 008.00⁰



Mary Angie Garcia

Bexar County District Clerk

101 W. Nueva, Suite 217

San Antonio, Texas 78205

*RETURN SERVICE REQUESTED*

CINCINNATI INSURANCE COMPANY
C/O NATIONAL REGISTERED AGENTS INC
1999 BRYAN ST 900
DALLAS, TX 75201-3136

2020CI11482 6/30/2020 CITCM LAURA CASTILLO

CERTIFIED MAIL #70191120000131734505

Case Number: 2020-CI-11482

2020CI11482  S00001

DON STRANGE OF TEXAS INC

vs.

CINCINNATI INSURANCE COMPANY

(Note: Attached document may contain additional litigants).

IN THE DISTRICT COURT
224th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS
RECEIVED

**CITATION**

JUL 0 8 2020

**"THE STATE OF TEXAS"**

DIRECTED TO:    CINCINNATI INSURANCE COMPANY

REGULATORY & COMPLIANCE

BY SERVING ITS REGISTERED AGENT, NATIONAL REGISTERED AGENTS INC
1999 BRYAN ST 900
DALLAS TX 75201-3136

"You have been sued. You may employ an attorney. If you or your attorney do not file a
written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next
following the expiration of twenty days after you were served this CITATION and ORIGINAL
PETITION , a default judgment may be taken against you." Said CITATION with ORIGINAL
PETITION was filed on the 24th day of June, 2020.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 30TH DAY OF June A.D., 2020.

MATTHEW R PEARSON
ATTORNEY FOR PLAINTIFF
425 SOLEDAD ST 600
SAN ANTONIO, TX 78205-1553



**Mary Angie Garcia**
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By: *Laura Castillo,* Deputy

---

DON STRANGE OF TEXAS INC
vs
CINCINNATI INSURANCE COMPANY

Officer's Return

Case Number: 2020-CI-11482
Court:224th Judicial District Court

Came to hand on the 30th day of June 2020, A.D., at 1:49 o'clock P.M. and EXECUTED (NOT
EXECUTED) by CERTIFIED MAIL, on the _____ day of _____ 20_____, by delivering
to: _____ at 1999 BRYAN ST 900 DALLAS TX 75201-3136
a true copy of this Citation, upon which I endorsed that date of delivery, together with
the accompanying copy of the CITATION with ORIGINAL PETITION .

Cause of failure to execute this Citation is _____.

**Mary Angie Garcia**
Clerk of the District Courts
of Bexar County, TX

By: *Laura Castillo,* Deputy

ORIGINAL (DK003)

Exhibit 5

CAUSE NO. 2020CI11482

| | | |
|---|---|---|
| **DON STRANGE OF TEXAS, INC.** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | **224TH JUDICIAL DISTRICT** |
| | § | |
| **THE CINCINNATI INSURANCE** | § | |
| **JOHNATHAN ANDREW MALISH** | § | |
| **Defendants** | § | **BEXAR COUNTY, TEXAS** |

**NOTICE OF REMOVAL OF CIVIL ACTION TO**
**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS**

**TO: THE CLERK OF THE 224th JUDICIAL DISTRICT COURT, BEXAR COUNTY**

Please take notice that on August 3, 2020, Defendant The Cincinnati Insurance Company filed in the United States District Court for the Western District of Texas its Notice of Removal. A copy of said Notice of Removal (without exhibits) is attached as Exhibit "A".

Please take further notice that, pursuant to 28 U.S.C. § 1446, the filing of that Notice of Removal in the United States District Court, together with the filing of a copy of the Notice of Removal with this Court, effects the removal of this action and the above-captioned Court may proceed no further unless and until the case is remanded.

Respectfully submitted this 3rd day of August, 2020.

*/s/ S. Jan Hueber*

**S. Jan Hueber**
State Bar No. 20331150
Hueber@litchfieldcavo.com
**Nicholas Rodriguez**
State Bar No. 24094190
RodriguezN@litchfieldcavo.com

**LITCHFIELD CAVO, LLP**
100 Throckmorton St., Ste. 500
Fort Worth, Texas 76102
Telephone: (817) 945-8025

Facsimile: (817) 753-3232
**ATTORNEYS FOR DEFENDANT**
**THE CINCINNATI INSURANCE COMPANY**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above pleading was served on this the

3rd day of August, 2020, on all counsel of record, via Electronic service in accordance with the

Texas Rules of Civil Procedure.


***Email: mpearson@pearsonlegalpc.com***
Matthew A. Pearson
State Bar No. 00788173
mpearson@pearsonlegalpc.com
Traci Conner
State Bar No. 24074066
tconner@pearsonlegalpc.com
PEARSON LEGAL, P.C.
425 Soledad, Suite 600
San Antonio, TX 78205
**ATTORNEYS FOR PLAINTIFF**


*/s/ S. Jan Hueber*
**S. Jan Hueber**